UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTOINETTE ALPHONSE<br>*Plaintiff* : | CIVIL ACTION NO. 3:02CV1195 (MRK) |
| v. : | |
| STATE OF CONNECTICUT<br>DEPARTMENT OF ADMINISTRATIVE :<br>SERVICES<br>*Defendant* : | OCTOBER 31, 2003 |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In her opposition to the motion for summary judgment, the plaintiff Antoinette Alphonse, ("plaintiff" or "Alphonse") no longer is seeking a promotion as personnel manager. Rather, plaintiff now contends that she should be either be reclassified as a "transitional manager", or simply given a 5% salary increase for performing her current duties. Plaintiff's Opposition at 7, 18. *Compare* Complaint ¶¶ 20-23.[1] As is clear from the job specification, it is not appropriate to reclassify her as transitional manager. A designation as a transitional manager does not require a promotion in grade or salary, and there is no reason to give a pay raise in her current position.

By her own admissions, plaintiff is not "similarly situated" in any material respect to either her predecessor William "Skip" Wallace, or her coworker, Suzy Lizzee. The Department of Administrative Services ("DAS") is entitled to summary judgment.

---

[1] Up until the filing of her opposition brief, plaintiff asserted that she was entitled to be promoted to <u>personnel</u> manager or a 5% pay raise. *See, e.g.*, Complaint ¶¶ 20-23. Her claim to be reclassified as a <u>transitional</u> manager is a new twist on her prior claims, and plaintiff should be deemed as conceding her prior claim regarding seeking a promotion to personnel manager. To address the new factual claims set forth in plaintiff's opposition, DAS proffers the attached Second Affidavit of David Krayeski, with attached documents concerning the DAS job specifications regarding the transitional manager classification and its VR-99 pay scale.

**I.     THERE ARE NO GENUINE ISSUES OF MATERIAL FACTS.**

Plaintiff cannot create an issue of material fact out of conclusory allegations. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990); Argus v. Eastman Kodak Co., 801 F.2d 38, 42 (2d Cir. 1986). Plaintiff's own admissions, through her Rule 56(a)(2) Statement ("Stmt") and her deposition testimony establish all material facts for purposes of this summary judgment motion.

**A.     Reclassification to a Transitional Manager Designation is Inappropriate.**

The plaintiff has never asked to be reclassified to a transitional manager position, and such a reclassification would be wholly inappropriate. A true and accurate copy of the DAS Job Description for Transitional Manager is attached to the enclosed Second Affidavit of David Krayeski as Exhibit 14. As set forth in the transitional manager job description, the position of transitional manager is not a permanent designation. Moreover, the position "transitional manager" would not appear on an organizational chart. Wallace dep. 14-17. Rather, it is a transitional position, with a duration of up to three years. Because plaintiff's current position is permanent, and her range of duties well established, it would be inappropriate to reclassify her to a transitional manager position for performing her current duties. Second Krayeski Affidavit ¶ 4.[2]

---

[2] Without any factual support, plaintiff contends that Wallace's transfer to a transitional manager position was unrelated to either an agency reorganization or his shift in career tracks and also denies SMF ¶ 26. See Plaintiff's Opposition at 7, 18; 56(a)(2) Stmt ¶ 26. During a deposition noticed and conducted by plaintiff's counsel, Wallace testified regarding his shift in career tracks and the agency's reorganization. See, e.g. Wallace dep. 8-13; SMF ¶¶ 22-25, 27. Undermining her denial of SMF ¶ 26, plaintiff admitted that Wallace was transferred to a transitional manager position because of the agency's reorganization. See Alphonse dep. 62, lines 9 - 13; Rule 56(a)(2) Stmt ¶¶ 25, 27. Finally, the transitional manager position may be used for up to three years, and Wallace held it for two and a-half years, from March 1996 through October 1998. See Exhibit 14; Second Krayeski Affidavit ¶ 6.

2

Moreover, a reclassification to a transitional manager position or to a VR-99 variable pay plan does not automatically means a 5% increase. As plaintiff acknowledged, at one point in time the entire HR Consultant job specification was designated under the VR-99, variable, salary plan. It did not translate into an automatic 5% pay raise.

> "Q: When they were transferred to VR-99, did all the HR consultants get a 5-percent increase?
> A: No.
> Q: So the act of being transferred from an MP-63 to a VR-99 doesn't guarantee a 5-percent increase?
> A: No."

Alphonse dep. 63. Likewise, in March 1996, William "Skip" Wallace transferred from a DAS Assistant Agency Personnel Administrator (paid at a MP 65 level) to transitional manager position working in the information technology section of DAS. DAS' Statement of Material Facts ("SMF") ¶ 25. Wallace did not receive a pay increase when he was transferred; rather, he simply maintained his previous pay level. Id. See also Wallace dep. 14-15. By contrast, when Susie Lizzee was transferred from DAS to act as the Human Resources Director of the Board of Education and Services for the Blind ("BESB"), she was transferred to a transitional manager position, and received a 5% raise, because she had assumed significant higher-level duties. Alphonse dep. 50-54.

**B.   The Plaintiff Is Not Similarly Situated to Wallace.**

The plaintiff incorrectly contends that there is a genuine dispute regarding whether she assumed all the duties of William Wallace when she assumed responsibility for the DAS Quality Assurance Unit. Plaintiff's Opposition at 22. By her

3

own admissions, plaintiff clearly did not and plaintiff is not similarly situated to Wallace in any material respect.

Plaintiff admits that Wallace spearheaded the implementation of the then-new APS system, was primarily responsible for the implementation of the Applicant Tracking Certificate ("ATC") module, was responsible for implementation of the Automated Personnel System ("APS") system, and also for large-scale training. See Rule 56(a)(2) Stmt ¶¶ 22-25. Plaintiff also concedes that Wallace wore "three hats" while he was designated as transitional manager, including functioning as the Assistant Director for APS, managing one-half of the human resources office, and performing Ellen Mantel's responsibilities for audit and review of APS. See Rule 56(a)(2) ¶ 27. Wallace also reported both to Robert Cosgrove and to Joseph Lefkowski. Id.

The plaintiff never reported to Robert Cosgrove. Rule 56(a)(2) ¶ 7. The plaintiff did not, and does not contend that she ever assumed any responsibilities for the human resources office. Plaintiff concedes that she was hired to perform the audit and review functions for APS. Rule 56(a)(2) ¶4; Exh. 11. She does not contend that she was functioning as the Assistant Director over the whole system, nor that she held any responsibility for implementing any part of the system, designing any module, or for large-scale training.

Plaintiff's reliance upon the unattested statement by Robert Cosgrove, attached as Exhibit 1 to her Opposition, likewise is unavailing.[3] Assuming *arguendo* that the statement is not stricken, Cosgrove does not say that plaintiff assumed all of Wallace's duties. Cosgrove concedes that Wallace was his assistant project leader for APS and

---

[3] Contemporaneous with the filing of this Reply, DAS is moving to strike Mr. Cosgrove's statement as being in violation of Fed. R. Civ. Pro. 56(e).

4

that Cosgrove and Wallace implemented the ATC system. Exhibit 1 at 3.[4] Cosgrove notes that Wallace assumed other duties, (apparently unknown to Cosgrove). Id. Cosgrove states that Alphonse took over Wallace's APS duties for training and coordinating meetings, but does not say that Alphonse implemented any system, either APS or ATC. Id. Cosgrove does not say that Alphonse took over the "other duties" Wallace assumed. Cosgrove's unattested statement does not contradict or undermine Wallace's sworn deposition testimony.

Finally, Wallace was an Assistant Agency Personnel Administrator, paid at salary level MP 65 before he became a transitional manager. SMF ¶ 25. The plaintiff does not even allege that she worked at the level of an Assistant Agency Personnel Administrator. When he transferred from that high management position to the IT arena, he maintained his salary level. SMF ¶ 25. As plaintiff concedes in her deposition, in those circumstances, the state typically permits an employee to maintain the same level of pay, and simply reassigns them different duties. Alphonse dep. 146.

### C.  Plaintiff is Not Similarly Situated to Lizee.

Plaintiff is not similarly situated in any material respect to Susie Lizee. Lizee was transferred from her then-current position at DAS to the Board of Education for the Blind ("BESB"). Alphonse dep. 50-51. Alphonse is maintaining her current position at DAS. By plaintiff's own understanding, Lizee went "to oversee the HR unit over at BESB," to "function as an HR director" over there; to act as "the top human resources personnel person at BESB." Alphonse dep. 50-52. Plaintiff conceded that her own

---

[4] Cosgrove's statement contradicts plaintiff's testimony that the APS system was ten years old, and that Wallace had no role in implementing the system. Alphonse dep. 108-109. Cosgrove's statement also contradicts plaintiff's testimony that Wallace's job never changed during Wallace's tenure as transitional manager. Alphonse dep. 59-60; Opposition brief at 8. See also admissions at 56(a)(2) Stmt ¶¶ 23-25, 27.

"Q: What duties have been assigned to your unit that were not there when Skip Wallace was there that are higher level duties?

A: I wouldn't say they were higher level duties.

Q: So there aren't any higher level duties that have been assigned to your unit?

A: No."

Alphonse dep. 112 lines 22-25 to 113 lines 1-3. She then proceeds to describe the new, lesser-level duties that have been absorbed by her unit after Wallace's departure. Alphonse dep. 113. Absorbing lesser-level duties does not justify a raise. Alphonse dep. 131-32 (attached).

Another aspect of plaintiff's complaint apparently is that she was required to do the job for which she was hired. See Opposition brief at 3-4. Plaintiff was hired to supervise the Audit and Quality Control Unit of the APS System at DAS. SMF ¶ 4; Exhibit 11. She was laterally transferred in as a personnel officer II, with the assurance that she would be promoted to HR Consultant after six months. Id. Hired to assume Skip Wallace's duties within that Unit, plaintiff nonetheless asserts that because she did not overlap for a sufficient time with Wallace, somehow the job was "dramatically" different when he left. Opposition brief at 4. Plaintiff was hired to assume his duties in the Unit; it should not have been a surprise that he left. Moreover, within three months, plaintiff was promoted to a HR Consultant level, with a salary group jump from MP 60 to MP 63. Although she did not assume higher level duties after that promotion, somehow, her job duties dramatically changed when she got comfortable with the job. See Opposition brief at 6. Plaintiff's claim lack any basis in fact or law.

7

## II. PLAINTIFF FAILS TO MEET HER BURDEN.

Because there is no position for plaintiff to be promoted or reclassified to, plaintiff fails to meet her prima facie burden. Even if she did meet her prima facie burden, because plaintiff is not similarly situated to either Wallace or Lizee, she cannot prove that DAS' legitimate non-discriminatory reasons are a pretext for discrimination, nor can she meet her ultimate burden of proving discrimination.

### A. In a Failure-to-Promote Case, There Must Be A Position.

As set forth in DAS' brief-in-chief, under controlling Second Circuit authority, if a plaintiff only asks generally to be promoted, and does not apply for a vacant position, the plaintiff cannot meet her prima facie burden of proof in a failure-to-promote case. See DAS brief at 8-9, citing Brown v. Coach Stores, Inc., 163 F.3d 706, 709-10 (2d Cir. 1998); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565-567 (2d Cir. 2000); Kinsella v. Rumsfeld, 320 F.3d 309, 314-315 (2d Cir. 2003). There must be a position that a Title VII plaintiff has applied for and been rejected, and repeated requests to be promoted do not suffice. Id. See also Johnson v. Delphi Energy & Engine Mgmt. Sys. Inc., 1999 U.S. App. LEXIS 10025 (2d Cir. May 20, 1999); Breland-Starling v. Disney Publ'g Worldwide, 166 F. Supp.2d 826, 829-30 (S.D.N.Y. 2001); Frierson v. NASDAQ/AMEX Market Group, 2001 U.S. Dist. LEXIS 2665 (S.D.N.Y. 2001).

Here, plaintiff simply seeks to continue to do her exact same job, with its exact same job responsibilities, and get paid more money, whether by designating her as a "transitional manager" or merely adding 5% to her paycheck. While every worker in state government would also like a raise, that wish simply does not form the basis for a discrimination claim based on race.

8

For a failure-to-promote claim, a plaintiff cannot simply allege or rely upon purported "similarly-situated" employee allegations, and indeed, without a vacant position, "similarly-situated" does not really apply. Thus, for purposes of establishing the legal standards for the prima facie analysis for a failure-to-promote case, plaintiff's reliance upon termination and merger cases is unfounded. See Opposition brief at 15-17, citing McGuinness v. Lincoln Hall, 263 F.3d 49 (2d Cir. 2001) (different severance packages depending upon race); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d cir. 2001) (pilot benefit policies after merger depending on age); Shumway v. United Parcel Service, 118 F.3d 60 (2d Cir. 1997) (termination for violating company policies).

As plaintiff concedes, there have not been any vacancies in the Human Resources Business Center for her to be promoted into. See Rule 56(a)(2) Stmt ¶ 17. Like the plaintiffs in Brown, Cruz and Kinsella, all plaintiff has done is repeatedly asked to be promoted. The job title she now seeks, transitional manager, is not applicable to a permanent position, as it is utilized when the job duties are not yet established, not as a "reclassification" for performing one's current, established duties. Moreover, reclassification to a transitional manager does not dictate a pay raise.

But even if plaintiff's "similarly situated" claims were applicable to her prima facie burden, it matters not, because she is not similarly situated to either Wallace or Lizee. Plaintiff fails to meet her prima facie burden of unlawful discrimination.

### B. Plaintiff is Not Similarly Situated To Either Wallace or Lizee.

As set forth at length in the factual discussion above, by her own admissions, plaintiff is not similarly situated to either her predecessor William Wallace or her former co-worker, Susie Lizee. Second Circuit case law is clear: the plaintiff must be similarly

9

situated to other employees <u>in all material respects</u>, but not in all respects. See <u>Lincoln Hall</u>, <u>Shumay</u>, supra. Plaintiff is not similarly situated in any respect.

Plaintiff seeks a pay raise in her current position. Both Wallace and Lizee were transferred to new positions. Wallace moved to a different area of DAS; Lizee transferred out of DAS altogether. As part of her transfer to BESB, Lizee assumed significantly higher level duties; plaintiff has not assumed any higher level duties since she was promoted to HR Consultant. Prior to his transfer to a transitional manager position, Wallace was an Assistant Agency Personnel Manager at a MP 65 pay scale, and he simply maintained that pay scale upon his transfer. Moreover, Wallace spearheaded implementation of the APS system, designed and launched one of its modules, and conducted large-scale training. Wallace had no less than "three hats," including significant personnel responsibilities. Plaintiff laterally transferred from DCF into her current DAS position as a Personnel Officer II at a MP 60 pay scale and within three months was promoted to HR Consultant, with a MP 63 pay scale. Plaintiff took over the audit functions for APS, but had no role in implementation, designing, or large-scale training. When she arrived at DAS, implementation of the APS system was more-or-less complete, and thus she could not have assumed Wallace's implementation duties. Plaintiff had no role in personnel functions. Plaintiff's job duties and situation are completely different than Wallace's or Lizee's.

## III.   CONCLUSION

Plaintiff did not apply for a vacant position, nor did the requirements of her own position materially change. Rather, plaintiff merely seeks a raise for doing her job. There is absolutely no merit in her Title VII claim, and whether for her failure to establish

10

her prima facie claim, or for her failure to sustain her burden of proving unlawful discrimination, DAS is entitled to summary judgment on all of plaintiff's claims.

DEFENDANT
STATE OF CONNECTICUT
DEPARTMENT OF ADMINISTRATIVE SERVICES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: *(signature)*
Clare E. Kindall
Assistant Attorney General
Federal Bar No. ct13688
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
Clare.Kindall@po.state.ct.us

## CERTIFICATION

I hereby certify that a true and accurate copy of the foregoing Memorandum in Support of Motion for Summary Judgment was served in accordance with Rule 5(b) of the Federal Rules of Civil Procedure by first-class mail, postage prepaid, on this 31st day of October, 2003 to:

Thomas W. Bucci, Esq.
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT 06604

*(signature)*
Clare E. Kindall
Assistant Attorney General

11

Case 3:02-cv-01195-MRK   Document 29   Filed 11/04/2003   Page 11 of 18
Alphonse vs State of Ct.
3/26/2003                                         Antoinette Alphonse

Page 1

1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF CONNECTICUT
2
3
4
5                                              COPY
      ------------------------------X
6  ANTOINETTE ALPHONSE,             :
           Plaintiff,               :   Civil Action No.:
7  V.                               :   302CV1195(RNC)
   STATE OF CONNECTICUT DEPARTMENT  :
8  OF ADMINISTRATIVE SERVICES,      :
           Defendant.               :
9  ------------------------------X
10
11
12
13
14
            DEPOSITION OF:  ANTOINETTE ALPHONSE,
15    taken before Kelly E. Yarasavych, Court Reporter
      and Notary Public in and for the State of
16    Connecticut, at the Office of the Attorney
      General, 55 Elm Street, Hartford, Connecticut,
17    on March 26, 2003.
18
19
20
21
22
            Reporter:  KELLY E. YARASAVYCH
23        License Registration Number:  00058
            BRANDON SMITH REPORTING SERVICE
24                 44 Capitol Avenue
              Hartford, Connecticut 06106
25                 (860) 549-1850

Case 3:02-cv-01195-MRK    Document 29    Filed 11/04/2003    Page 12 of 18
Alphonse vs State of Ct.

3/26/2003                                                    Antoinette Alphonse

Page 131

1       Do you know of any circumstance when someone
2  received a 5-percent, or any percent increase, for taking
3  on lower duties?
4       A    No.
5       Q    Are you aware of any circumstances in DAS, or
6  anywhere else, where people take on additional higher level
7  duties and don't get paid for it?
8       A    No.
9       Q    Are you aware of anywhere in DAS where someone
10 might take on a special project but not get additional pay
11 for it?
12      A    By, "project," meaning it's going to end?
13      Q    Correct.
14      A    Yes.
15      Q    What kind of projects do people take on and not
16 get paid for it, even though they were higher level duties?
17      A    The SCOPE project, for one.  There's a number
18 of people that are working on the SCOPE project that are
19 not being compensated for the additional duties.
20      Q    What about issues related to the state employee
21 layoff of last fall or last winter?
22      A    I'm not sure.  Where does that relate?
23      Q    Well, were there additional job
24 responsibilities at DAS, given the number of state
25 employees who were laid off in the past couple of months?

Case 3:02-cv-01195-MRK    Document 29    Filed 11/04/2003    Page 13 of 18
Alphonse vs State of Ct.
3/26/2003 .
Antoinette Alphonse

Page 132

1   A   The folks that were laid off?

2   Q   Yes, ma'am.

3   A   I'm not sure I understand.

4   Q   Did DAS have to do anything for the people who
5   were laid off? Did they have to process any paperwork?

6   A   Yes.

7   Q   Did they have to handle all kinds of
8   additional, unusual amounts of stuff, dealing with the
9   layoff?

10  A   Yes.

11  Q   Did people get paid extra money for taking on
12  that unusual circumstance?

13  A   No.

14  Q   What about the early retirement program that's
15  now in place in the state, is that a special project?

16  A   Yes.

17  Q   And are people getting paid extra money at DAS
18  for processing those kinds of claims?

19  A   No.

20  Q   Are people generally paid more money, 5
21  percent, 10 percent, any amount of extra money for salary,
22  for taking on the same level job duties, additional duties
23  of the same level?

24  A   Because it's additional duties, and you are
25  doing more than you were doing, I would say yes.

Brandon Smith Reporting Service

6b1a1424-3dd0-4ea8-8acc-8f89cd07109e

Case 3:02-cv-01195-MRK    Document 29    Filed 11/04/2003    Page 14 of 18
Alphonse vs State of Ct.
3/26/2003                                                    Antoinette Alphonse

Page 149

```
 1                    STATE OF CONNECTICUT
 2
 3        I, Kelly E. Yarasavych, a Notary Public duly
 4   commissioned and qualified in and for the State of
 5   Connecticut, do hereby certify that pursuant to notice
 6   there came before me on the 26th day of March, 2003, the
 7   following-named person, to wit:  ANTOINETTE ALPHONSE, who
 8   was by me duly sworn to testify to the truth and nothing
 9   but the truth; that she was thereupon carefully examined
10   upon her oath and examination reduced to writing under my
11   supervision; that this deposition is a true record of the
12   testimony given by the witness.
13        I further certify that I am neither attorney nor
14   counsel for nor related to nor employed by any of the
15   parties to the action in which this deposition is taken,
16   and further that I am not a relative or employee of any
17   attorney or counsel employed by the parties hereto, or
18   financially interested in this action.
19        IN WITNESS THEREOF, I have hereunto set my hand
20   this   3rd     day of April     2003
21
                        _Kelly E. Yarasavych_____
22                       Kelly E. Yarasavych, Notary Public
23   My Notary Expires:  May 31, 2007
     License Registration Number:  00058
24
25
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTOINETTE ALPHONSE<br>*Plaintiff* | CIVIL ACTION NO. 302CV1195 (MRK) |
| v. | |
| STATE OF CONNECTICUT<br>DEPARTMENT OF ADMINISTRATIVE SERVICES<br>*Defendant* | OCTOBER 31, 2003 |

## SECOND AFFIDAVIT OF DAVID KRAYESKI

I, David Krayeski, am over eighteen years of age and believe in the nature and obligation of an oath.

1. I am currently employed by the Department of Administrative Services ("DAS") as a DAS Manager in the Human Resources Business Center. In this capacity, the plaintiff, Antoinette Alphonse reports directly to me.

2. A true and accurate copy of the DAS Job Description for Transitional Manager is attached to this Affidavit as Exhibit 14. As set forth in the job description, a transitional manager position is typically used when there is a reorganization of an agency.

3. The position of transitional manager is not a permanent designation. Rather, it is a transitional position, able to be used up to three years, when the specific duties of a position are not yet determined.

4. The transitional manager position is not an appropriate designation for Ms. Alphonse's current position, as her position is not transitional, and her job duties are well-established.

5. Ms. Alphonse has never asked me to be reclassified to a Transitional Manager designation. Rather, she has consistently requested to be promoted to a Personnel Manager designation, which currently is not used in DAS.

6. Reclassification to a transitional manager designation does not indicate that an employee would necessarily receive a pay increase. For example, when William "Skip" Wallace transferred from an Assistant Agency Personnel Administrator (paid at a MP 65 level) to transitional manager on March 21, 1996, he did not receive a pay increase. Rather, he simply maintained his previous pay level, until he left DAS on October 23, 1998.

7. The transitional manager position uses the "VR-99" or "variable" pay scale. Again, changing a position's pay scale to "VR-99" does not mean that the position must receive a higher scale – rather, it provides flexibility in establishing a pay level.

**FURTHER AFFIANT SAYETH NOT**

The foregoing is true to the best of my knowledge and belief.

_____
David Krayeski

STATE OF CONNECTICUT ) 
                     : ss. HARTFORD
COUNTY OF HARTFORD  )

Sworn and subscribed before me on this 31st day of October, 2003.

_____
Commissioner of the Superior Court/
Notary Public

My Commission Expires 9/30/08

2



| Classified/Non-Competitive | | |
|---|---|---|
| **Class Code** | **Pay Plan** | **Class Title** |
| 7490 | VR - 99 | TRANSITIONAL MANAGER |
| 1149 | VR - 99 | TRANSITIONAL MANAGER |

## PURPOSE OF CLASS:

In a state agency this class is used in one of two ways:

1. Implements transition of managers from positions which have been eliminated through agency reorganization to new positions identified as needed within the organization. Incumbents in this class will be trained as necessary to assume a new set of responsibilities and master a new set of job knowledges and skills.
2. Utilized for specific managerial positions where job duties are not yet fully defined in agencies undergoing a significant reorganization. This permits the agency to define and implement the most effective organizational structure to achieve its mission.

## MINIMUM QUALIFICATIONS REQUIRED
## KNOWLEDGE, SKILL AND ABILITY:

Considerable knowledge of management principles and techniques; considerable interpersonal skills; considerable oral and written communication skills; considerable ability to understand and apply state and federal laws, statutes and regulations; considerable ability to analyze and solve problems; considerable ability to effect and manage change; considerable ability to plan for and implement excellent customer service; considerable ability to learn a new knowledge base; considerable ability to learn policy and procedure.

## EXPERIENCE AND TRAINING:

Evidence of a career progression that supports the required knowledges, skills and abilities.

## SPECIAL REQUIREMENT:

This class is reserved for current state employees.

## TRAINING REQUIREMENT:

The training and/or transition period shall not exceed three years. Prior to expiration of the three year training and/or transition period incumbents in this class must become eligible for permanent appointment to the target class.

This replaces the existing specification for the same class in the same Salary Group VR 99 approved effective July 1, 1995. (Revised to establish class code)

0544A 4/21/98 pzd

| CC | Final# | Occup. Group | Bargaining Unit | EEO | Eff. Date |
|---|---|---|---|---|---|
| 7490 | 419 | (33)-Social Services | (02)-MANAGERIAL | (2)-Professional | Mar 27, 1998 |
| 1149 | 419 | (33)-Social Services | (02)-MANAGERIAL | (1)-Officials And Administrators | Mar 27, 1998 |

Print

eProcurement | Business | Fleet Services | Jobs | Human Resources | Resource Directory | News

EXHIBIT 14

|  *HOME* | The Department of Administrative Services. Review our Privacy Policy. All State disclaimers and permissions apply. Need to contact us? Send e-mail to das.webmaster@po.state.ct.us |
|---|---|
| | Copyright ©2000, 2001, 2002, 2003  - Last Updated: Tuesday, October 28, 2003 |
|  | The software to view and print Adobe Acrobat documents (PDF Files) is available free from the Adobe website. To get a free copy of the software, click the "Get Acrobat" image. |